IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIE PERKINS,                          )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )   Case No.   13-cv-1182-MJR-SCW
                                         )
WILILAM RANKIN and ALFONSO               )
DAVID,                                   )
                                         )
                    Defendants.          )

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I.    Introduction

This case is before the Court on Defendants' motion for summary judgment for failure
to exhaust administrative remedies (Docs. 31 and 32).   The matter has been referred to United States
Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28
U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is
**RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions
of law, and **GRANT IN PART AND DENY IN PART** Defendants' motion for summary
judgment (Docs. 31 and 32).

## II.    Findings of Fact

### A.    Procedural Background

On November 18, 2013, Plaintiff filed his Complaint against Defendants William
Rankin and Alfonso David (Doc. 1).   Plaintiff alleged that on January 11, 2013 he was attacked by
several inmates while at East Moline Correctional Center and, as a result of the assault, he suffered a
broken left ankle.   While Plaintiff was given a splint and crutches, Plaintiff alleges that Defendant

Rankin refused to provide him with any pain relief and any further medical treatment (Doc. 7 at p. 1).

On February 13, 2013, Plaintiff was transferred to Shawnee Correctional Center where he eventually

was seen by Defendant David on February 21, 2013 for his continuing pain (*Id.*).   Plaintiff alleges that

Defendant David refused to provide him with any pain medication, although he did issue him a

slow-walk, low bunk, and low gallery permit.   Plaintiff saw Defendant David again on April 18, 2013

and at that time David provided Plaintiff with a two-week supply of Tylenol but no further pain

medication (*Id.* at p. 2).

In response to Plaintiff's Complaint, both Defendants filed the instant motion for

summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies.   Defendant

Rankin concedes that Plaintiff filed a grievance against him while at Shawnee Correctional Center on

February 20, 2013 (Doc. 32-1).   That grievance was submitted directly to the ARB and received by the

ARB on February 25, 2013 (*Id.*).   The ARB reviewed and issued a ruling on the grievance on February

5, 2014 (Doc. 32-2 at p. 2).   Defendant Rankin argues that as Plaintiff filed his suit on November 18,

2013, prior to receiving a response to his grievance, that he did not fully exhaust his grievance prior to

filing suit.   Plaintiff argues that the grievance was not sent back within the six month time frame

allowed by the administrative code and thus he did not have to wait until the ARB responded as the

deadline for responding had passed.

Defendant David also maintains that Plaintiff did not exhaust his administrative

remedies as to his deliberate indifference claim against him.   Plaintiff's Complaint states that he saw

Defendant David on February 21, 2013 and then again on April 18, 2013 (Doc. 7 at pp. 1-2).   Plaintiff

stated in an affidavit that he filed an emergency grievance on April 19, 2013 directly to the Shawnee

warden regarding David's treatment (Doc. 1 at p. 8 ¶ 8).   There is no record of the grievance being

filed (Doc. 32-2).   Plaintiff claims that he never received a response to his grievance and thus could

not fully exhaust his remedies.

**B.      Pavey Hearing**

The undersigned found that the exhaustion issue as to Defendant Rankin rested on a purely legal issue as to whether Plaintiff prematurely filed his Complaint prior to the ARB ruling on his grievance, and thus did not require a hearing.   However, the undersigned found that there were issues of fact as to whether Plaintiff properly exhausted his administrative remedies as to Defendant David. As such, the Court conducted a hearing on December 5, 2014 in accordance with *Pavey v. Conley*, **544 F.3d 739, 742(7th Cir. 2008).**

At the hearing, Defendant David called Christian Kotter, who was the grievance officer at Shawnee Correctional Center in April 2013.   Kotter testified that he dealt with emergency grievances and that the grievances were submitted first to the grievance officer to be submitted to the warden for review.   When Kotter received the grievances, he would log them in the emergency grievance log.   Kotter testified, however, that there was another avenue through which inmates could submit emergency grievances, by submitting them directly to the warden.   In those cases, the grievances would not be logged unless the warden declared it an emergency and submitted it to the grievance officer for review.   At that time, Kotter would log the grievance.   If the warden received the grievance directly and determined that it was not an emergency, then the grievance would be returned to the inmate directly and would not be logged.   Kotter also testified that grievance records were only kept for one year.   Kotter stated that he looked through the grievance logs for an emergency grievance submitted by Plaintiff in April 2013 and the records did not show that a grievance was filed on that date.

Plaintiff testified that he submitted not one, but three emergency grievances to the warden in April 2013.   Plaintiff testified that he submitted one grievance to an Internal Affairs officer,

although Plaintiff does not remember the officer's name. Plaintiff testified that at the time he submitted the grievance he was in receiving awaiting transfer to Big Muddy. He later testified that he was not awaiting transfer but instead was in receiving awaiting placement in general population. Plaintiff remembers that he submitted the grievance in the evening but does not recall the date.

Plaintiff further testified that he submitted a second identical grievance to a sergeant in receiving a few days later. At that time he was still in receiving waiting to be placed in general population. Plaintiff testified that receiving did not have a grievance box so he had to give his grievance directly to the sergeant. He gave a third identical grievance to an inmate porter who was sweeping the floor a few days later and asked the porter to place the grievance under the counselor's door.

While Plaintiff initially testified that he was in receiving for a transfer to Big Muddy Correctional Center, he later testified that in April 2013, he was in receiving prior to his placement in general population. He was then transferred to the healthcare unit for six days due to his broken ankle and then placed in general population in April or May. Plaintiff remained in general population until he was transferred to Big Muddy on New Year's Eve 2013.

Plaintiff also testified that he had his cellmate in receiving write the three grievances in February shortly after his transfer to receiving. He does not remember the name of his cellmate. He testified that the grievances mention both Defendants Ranking and David and that he told his cellmate what had happened to his ankle and the medical treatment he received at East Moline Correction Center and that the cellmate had written the grievances. He later testified that the grievances were written in February and then he held on to them until April when he submitted the grievance. When informed that Plaintiff had not seen Dr. David in early February, Plaintiff testified that he had the grievance written for him sometime in March or April after he saw Dr. David. Plaintiff

acknowledged that he never followed up on the grievances with either the Internal Affairs officer, the

sergeant, or the porter.

### III.    Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and

affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to

judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act

("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by

a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict

adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir.**

**2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").**

Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**

Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the

time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir.**

**2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison

administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely

unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the

defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are

to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus,

where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth

the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as
> follows: (1) The district judge conducts a hearing on exhaustion and permits whatever
> discovery relating to exhaustion he deems appropriate.   (2) If the judge determines
> that the prisoner did not exhaust his administrative remedies, the judge will then
> determine whether (a) the plaintiff has failed to exhaust his administrative remedies,
> and so he must go back and exhaust; (b) or, although he has no unexhausted
> administrative remedies, the failure to exhaust was innocent (as where prison officials
> prevent a prisoner from exhausting his remedies), and so he must be given another
> chance to exhaust (provided that there exist remedies that he will be permitted by the
> prison authorities to exhaust, so that he's not just being given a runaround); or (c) the
> failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and
> when the judge determines that the prisoner has properly exhausted his administrative
> remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the
> merits; and if there is a jury trial, the jury will make all necessary findings of fact
> without being bound by (or even informed of) any of the findings made by the district
> judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was

required to follow the regulations contained in the Illinois Department of Correction's Grievance

Procedures for Offenders ("grievance procedures") to properly exhaust his claims.   **20 Ill.**

**Administrative Code §504.800** *et seq.*   The grievance procedures first require inmates to speak

with the counselor about their complaint.   **20 Ill. Admin. Code §504.810(a).**   Then, if the counselor

does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer

within 60 days of the incident.   *Id.*   The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including
> what happened, when, where, and the name of each person who is subject of or who is
> otherwise involved in the complaint.   The provision does not preclude an offender
> from filing a grievance when the names of individuals are not known, but the offender
> must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**   "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."   **20 Ill. Admin. Code §504.830(d).**   If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").   The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code §504.850(a).**   "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."   **20 Ill. Admin. Code §504.850(e).**   "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   The offender shall be sent a copy of the Director's decision."   **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.   In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).**   If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary

after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

B.      Analysis

1.      *Defendant Rankin*

Defendant Rankin argues that he is entitled to summary judgment on Plaintiff's deliberate indifference claim because Plaintiff did not wait until he received a response to his grievance to file his Complaint. Exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A prisoner must wait bring a suit until he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a)).** However, if an inmate never receives a response to his grievance, then his attempts at exhaustion are deemed thwarted and the inmate may proceed with his lawsuit. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).**

Here, the parties dispute as to whether Plaintiff properly filed his Complaint when he had not yet received his response to the grievance he submitted directly to the ARB. It is undisputed

that Plaintiff submitted a grievance regarding his medical treatment at East Moline Correctional Center to the ARB after he was transferred to Shawnee Correctional Center (Doc. 40-1 at p. 13).   His grievance was filed on February 20, 2013 (*Id.*) and received by the ARB on February 25, 2013 (Doc. 41-1 at p. 1).   Plaintiff filed his Complaint on November 18, 2013 (Doc. 1).   The ARB did not respond to his grievance until February 5, 2014, when it ruled on the merits denying Plaintiff's grievance (Doc. 41-1 at p. 1).

The undersigned finds that Plaintiff exhausted his administrative remedies as he waited an adequate amount of time for a response to his grievance before filing his Complaint.   Plaintiff submitted his grievance to the ARB and it was received on February 25, 2013.   The regulations provide that the Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   **20 Ill. Admin. Code §504.850(f).**   The ARB did not respond to Plaintiff's grievance until February 5, 2014 (Doc. 41-1).   The undersigned finds the ARB's response to be unduly delayed.

While the administrative code does presumably allow for a deviation from the six month timeline as the code indicates that the final determination should be made within six months *where reasonably feasible*, there is no justification for the delay that occurred here.   Plaintiff waited nearly nine months for a response and when he did not obtain a response from the ARB he filed his Complaint.   He did not receive the grievance back until almost a full year after first submitting the grievance.   The undersigned finds that Plaintiff gave the ARB a reasonable opportunity to respond to his grievance before filing his Complaint.   The ARB failed to respond to the grievance within the six month time period, nor did they provide any indication to Plaintiff that his grievance was still being considered or had even been received by the ARB.   Without any indication that the grievance would

be ruled on, the undersigned finds Plaintiff was justified in filing his Complaint.   As Plaintiff gave the

ARB a fair opportunity to review his grievance, *see Pavey v. Conley*, **663 F.3d 899, 905-06 (7th Cir.**

**2011)**, and the ARB did not respond in a timely fashion, the undersigned finds that Plaintiff exhausted

his grievance as to Defendant Rankin.

Defendant Rankin tries to argue that the ARB timely responded to the grievance

because, he argues, the Director has six months from the date he receives the decision from the ARB

to rule and return the grievance to the inmate.   However, the undersigned finds that Defendant's

reading of **20 Ill. Admin. Code §504.850(f)** to be baseless.   The plain language of the section

indicates that the Director has six months from "receipt of the appealed grievance."   Nothing in the

code suggests that the receipt is based on when the Director receives the grievance from the ARB and

Defendant's interpretation that it is, is not a fair reading of the statute.   Nor has he pointed to any case

law which supports his unique reading of the code.   In any event, the record in this case clearly

indicates that the grievance was received on February 25, 2013.   Thus, the deadline for reviewing and

returning the grievance had long since passed when a ruling was issued on February 5, 2014.

Accordingly, the undersigned recommends that the Court **DENY** Defendant Rankin's motion for

summary judgment.

2.    *Defendant David*

However, the undersigned finds that Plaintiff has failed to exhaust his administrative

remedies as to Defendant David.   Plaintiff testified that he submitted three identical grievances

directly to the warden as to his claim against Defendant David, but the undersigned finds Plaintiff's

testimony to lack credibility.   Plaintiff's testimony at the hearing was riddled with contradictions.

Plaintiff claimed both in his Complaint (Doc. 1) and his responsive brief that he filed an emergency

grievance against Defendant David on April 19, 2013, but at the hearing he, for the first time, testified

that he filed three grievances regarding Defendant David in April.  He originally stated in his Complaint that he filed the one grievance directly to the warden, but now he states that he filed three grievances by giving one to an Internal Affairs officer, a sergeant on duty, and an inmate porter.[1] Never, prior to the hearing, did Plaintiff indicate that he filed three identical motions.  He also stated in his filings that he filed his emergency grievance on April 19, 2013, yet at the hearing he testified that he filed three grievances over the course of several days.  The Court finds this testimony unreliable and contradictory.

Plaintiff also contradicted himself on when he wrote the grievance.  Plaintiff first testified that he had his cellmate in receiving write the grievance on his behalf when he initially arrived at Shawnee Correctional Center, sometime in early February 2013 around Valentine's Day.  However, at that time Plaintiff had not seen Defendant David, and although he did file a grievance in February, that grievance focused only on his treatment at East Moline Correctional Center by Defendant Rankin.  When questioned about the grievance being filed in April, Plaintiff testified that the grievances were written in February and he held on to them until April.  By indicating that his grievance was written in February, Plaintiff seems to be referring to his original grievance which he submitted directly to the ARB.  This grievance could not have involved claims against Defendant David as at the time it was written, Plaintiff had yet to be seen by Defendant David.  When presented with this impossibility, Plaintiff changed his testimony again, and stated that the grievances were written in March or April, contradicting his earlier testimony.

The undersigned not only finds Plaintiff's testimony that he submitted three grievances to lack credibility, but there is also no evidence in the record to support Plaintiff's contentions.  Grievance Officer Christian Kotter testified that he reviewed the logs and could not

---

[1] The undersigned notes that filing a grievance with another inmate is not a proper method for submitting a grievance.

locate any emergency grievances filed by Plaintiff in April 2013.   The undersigned notes that Kotter

did testify that there were two options available to inmates to file emergency grievances to the warden.

An inmate could file his emergency grievance with the grievance officer, who would then log the

grievance and then forward it to the warden.   This is the normal procedure for submitting an

emergency grievance, but the undersigned notes that Kotter also testified that there was another

avenue inmates could take to file an emergency grievance which allowed an inmate to submit a

grievance directly to the warden.   The undersigned has never before heard, in any of the numerous

hearings involving the prisoner grievance process at Illinois prisons which this Court has held (and

there are many), of this second process for submitting emergency grievances.   There has never been

any prior indication from IDOC that inmates are allowed to submit emergency grievances directly to

the warden and the undersigned finds this portion of Kotter's testimony to be questionable.   The

normal process to file an emergency grievance is to submit the grievance to the grievance officer where

it is logged and forwarded to the warden.

However, even if it is true that an inmate is allowed to submit an emergency grievance

directly to the warden, this is not what Plaintiff testified he did in this case.   He testified that he

submitted his grievance, marked as an emergency, to an Internal Affairs officer, a sergeant, and an

inmate porter who he directed to submit to his counselor.   There is no indication in the record that

either of those individuals would have submitted the grievance directly to the warden, thereby

bypassing the grievance officer and the logging system.   Thus, if Plaintiff submitted the grievance to

any of these individuals, the undersigned finds that the grievance would have proceeded through the

normal grievance process and would have been logged as an emergency grievance.   That it was not

logged, indicates that Plaintiff did not file his grievance as he testified.    Thus, the undersigned finds

that Plaintiff's testimony that he tried to file an emergency grievance on Defendant David lacks

credibility and is not supported by the evidence.   As such, the undersigned finds that Plaintiff did not

file an emergency grievance as he claims and thus failed to exhaust his administrative remedies against

Defendant David.

### IV.    Conclusion and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff

has exhausted his administrative remedies as to Defendant Rankin, but failed to exhaust his

administrative remedies as to Defendant David.   Thus, it is **RECOMMENDED** that the Court

**GRANT IN PART AND DENY IN PART** Defendants' joint motion for summary judgment

(Docs. 31 and 32).

Should the Court adopt this Report and Recommendation, the only claim which will

be left will be Plaintiff's deliberate indifference claim against Defendant Rankin.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to

any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely

objection may result in the waiver of the right to challenge this Recommendation before either the

District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir.**

**2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before

**January 5, 2015**.

**IT IS SO ORDERED**.
DATED: December 15, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge